**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

HECTOR REGLERO p/k/a "Ricardo
Montaner" in Individual, and MONTANER
LEGACY MUSIC LLC, a Florida Limited
Liability Company,

          Plaintiffs,

v.

UNIVERSAL MUSIC GROUP N.V., a
Dutch naamloze vennootschap (public
limited liability company), and
UNIVERSAL MUSIC PUBLISHING
VENEZUELA S.A., a Venezuelan Sociedad
Anonima (corporation),

          Defendants.

_____/

**COMPLAINT**

Plaintiffs, HECTOR REGLERO, p/k/a Ricardo Montaner ("Montaner"), and

MONTANER LEGACY MUSIC LLC ("Legacy"), by and through undersigned counsel, hereby

sue Defendants, UNIVERSAL MEDIA GROUP  N.V. ("UMG") and UNIVERSAL MUSIC

PUBLISHING VENEZUELA S.A. ("UMPV"), regarding the ownership of certain copyrights and

Defendants' intentional interference with Plaintiffs' lawful exploitation of the same, and in support

thereof, state as follows:

**THE PARTIES**

1.     Montaner is an Argentine-born recording artist who is renowned throughout the

world, and specifically Latin America.

2.     Montaner is domiciled in Miami, Florida.

1

3. In his multi-decade career, Montaner has released more than 24 albums and has billions of streams worldwide.

4. Legacy is a limited liability company organized under the laws of Florida with its principal place of business in Miami-Dade County, Florida.

5. All of Legacy's members are domiciled in Miami-Dade County, Florida.

6. UMG is a Dutch public limited liability company domiciled at 2100 Colorado Avenue, Santa Monica, California.

7. UMPV is a Venezuelan corporation domiciled in Venezuela, with a principal place of business at Avenue San Felipe, Edificio Centro Coinasa, Piso 5, Oficina 54-56, La Castellana, Caracas, Venezuela.

## VENUE & JURISDICTION

8. This is a civil action seeking damages and injunctive relief for tortious interference with an advantageous and contractual relationship, declaratory relief under 17 U.S.C. § 203 for a permanent and temporary injunction, and attorneys' fees and costs under 17 U.S.C. § 505.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between parties having complete diversity.

10. This Court also has subject matter jurisdiction over this action pursuant to exclusive jurisdiction under 28 U.S.C. § 1338 insofar as to the determination of copyright ownership necessary to adjudicate Plaintiff's declaratory relief claim.

11. Further, this Court has supplemental jurisdiction over Plaintiff's related tortious interference claim under 28 U.S.C § 1367.

12.     This Court has personal jurisdiction over Defendants because, as more fully alleged below, Defendants have committed tortious acts within this District and/or have caused injury to Plaintiff within this District, and Defendants have otherwise purposefully availed themselves of the privilege of conducting activities within this District.

13.     Venue is proper over Defendants in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

14.     Venue is proper in the Southern District of Florida because this is the district in which a substantial part of the acts and omissions giving rise to the claim involved in this action occurred, where the damages were felt, where the cause of action accrued, and where most of the witnesses reside.

15.     Plaintiffs, by and through undersigned counsel, hereby sue Defendants regarding the ownership and income interest of certain sound recordings owned by Plaintiffs, and it sues Defendants due to their tortious interference with Plaintiffs' advantageous business relationship with their licensee, Warner Music Latina Inc. d/b/a ADA Latin ("ADA Latin").

16.     ADA Latin is based at 555 Washington Avenue, 4th Floor, Miami Beach, Florida 33139.

## GENERAL ALLEGATIONS

17.     On or about November 3, 1986, Montaner entered into an agreement with Love Records, L.R., C.A. ("Love Records"), which at the time was a Venezuelan record label (the "Love Records Agreement").  *See* <u>Exhibit A</u>, a true and accurate certified English translation of the Love Records Agreement.

18.     Between 1986 and 1992, Montaner recorded, and Love Records released, five albums under the Love Records Agreement.

19.     These albums were *Ricardo Montaner*, *Ricardo Montaner 2*, *Un Toque de Misterio*, *En El Último Lugar del Mundo*, and *Los Hijos del Sol* (together, the "Albums").

20.     On November 19, 1993, Montaner and Love Records entered into a settlement agreement known as a *finiquito* to resolve a dispute between themselves, and other related parties (the "*Finiquito*").  *See* Exhibit B, a true and accurate certified English translation of the *Finiquito*.

21.     Pursuant to the *Finiquito*, the Love Records Agreement was annulled and all rights in the Albums reverted to Montaner.  *Finiquito* at p. 6.

22.     On or about November 19, 1993, Montaner and Love Music, S.A., a separate but related entity to Love Records, entered into an agreement which further confirmed Montaner's sole ownership of the Albums and the reversion of all publishing rights to Montaner.  *See* Exhibit C, November 19, 1993 Agreement with Love Music (the "Love Music Agreement").

23.     Through a series of alleged acquisitions and assignments, Universal Music Venezuela, S.A., in 2001, claimed to be the assignee of Love Records' right under the *Finiqutio* and/or the Love Music Agreement and claimed to be entitled to distribute and exploit the Albums.

24.     On or about February 3, 2001, Universal Music Venezuela, S.A. ("UMV"), a now-defunct former Venezuelan subsidiary of UMG, entered into a distribution agreement with Montaner (the "2001 Distribution Agreement").  A true and accurate English-language translation of the 2001 Agreement is attached hereto and incorporated herein as Exhibit D.

25.     The 2001 Distribution Agreement confirms that Montaner is the sole owner of the Albums.

26.     The 2001 Distribution Agreement lacked any specificity as to duration.

27.     On or about December 12, 2022, UMG dissolved UMV, which was recorded on December 22, 2022.

28.     UMV and its parent, UMG, have grossly and willfully defaulted on the 2001 Distribution Agreement by failing to pay any royalties whatsoever to Montaner for the entire duration of the 2001 Distribution Agreement.

29.     Despite UMG and UMPV not being entitled to claim any distribution right under any theory for the aforementioned reasons, on or about March 30, 2022, Montaner delivered notices of the termination of the 2001 Distribution Agreement pursuant, in part, to 17 USC § 203 (the "Termination Notices").  *See* Group Exhibit E, termination notices.

30.     The Termination Notices set the effective date of termination as July 1, 2024.

31.     Although the Termination Notices were effective, after UMG and its affiliates issued correspondence disputing the validity of the Termination Notices, on March 5, 2024 Montaner delivered to UMG and UMV a second notice of termination pursuant to 17 USC § 203 terminating the Love Records Agreement and thereby extinguishing any possible claim UMG and UMPV may have over the Albums under the same (the "2024 Termination Notice").  *See* Exhibit F, the 2024 Termination Notice.

32.     A copyright owner can terminate any transfer or license under 17 USC § 203.

33.     Under Venezuelan law, a contract is not assignable without the notice to or acceptance of the counterparty to the contract.   Venez. CÓD. CIVIL art. 1.550 (1982) ("El cesionario no tiene derecho contra terceros sino después que la cesión seha notificado al deudor, o que éste la ha aceptado."), https://wipolex-res.wipo.int/edocs/lexdocs/laws/es/ve/ve018es.pdf.

34.     In addition, Venezuelan copyright law provides that the author must consent in writing to any transfer of a copyright.  Venez. Copyright Act, Title III, Ch. 1, Sec. 3, Art. 57.

35.     Neither UMG nor UMV ever sought Montaner's consent to any purported transfer, nor did they notify Montaner of any purported transfer of rights.

36.     Under Venezuelan law, a contract without a defined term is unilaterally terminable by either party. Venez. Sala Constitucional, sentencia N° 1771, December 16, 2013; Venez. Sala de Casación Civil, sentencia N° RC.000417, August 12, 2011, Hyundai de Venezuela, C.A. vs. Hyundai Motor Company.

37.     Florida law also recognizes the right for a party to terminate a contract with successive performances but indefinite duration upon notice after a reasonable time.  Florida Statutes § 672.309.

38.     After the Termination Notices, Montaner granted Legacy an exclusive license to distribute, sublicense, and otherwise commercially exploit the Albums.

39.     Subsequent to the termination of the 2001 Distribution Agreement, Montaner as the sole owner of the Albums granted an exclusive license to Legacy for the purpose of distributing, sublicensing, or otherwise commercially exploiting the Albums.

40.     On or about June 2, 2025, Legacy entered into an agreement with ADA Latin to distribute and exploit the Albums.

41.     Subsequently, on April 22, 2026, UMG transmitted correspondence to ADA Latin, purportedly on behalf of UMPV, falsely claiming that UMPV is the owner of the Albums.  *See* Exhibit F, April 22, 2026 correspondence (the "Wrongful Claim Letter").

42.     In the Wrongful Claim Letter, UMPV demanded that ADA Latin "refrain from the manufacture, distribution, marketing, or other sale and/or exploitation in any manner" of the Albums.

43. At the time it tendered the Wrongful Claim Letter, UMPV and UMG knew that they did not own the Albums.

44. UMPV and UMG knew that any entitlement to distribute the albums had already expired.

45. UMPV and UMG further knew that they never owned the albums, nor did any entity UMG had previously owned or purchased, such as Love Records, S.A., own the albums, nor did the parent company of Love Records, S.A.

46. In fact, UMPV has never had any license or other entitlement whatsoever to exploit the Albums, as the only agreements related to the Albums were the now-terminated 2001 Distribution Agreement (with the now-defunct UMV) and whichever now-terminated preceding agreement under which UMV purported in the 2001 Distribution Agreement to have prior distribution rights.

47. On May 6, 2026, UMG sent correspondence to Legacy again falsely claiming that UMPV owned the Albums and making demands that Legacy take down the Albums and provide information relating to the distribution of the Albums.

48. UMPV and UMG's wrongful conduct has caused ADA Latin to demand assurances and indemnification from UMPV and UMG's wrongful claims.

49. There is an immediate and present risk that ADA Latin will seek to terminate its distribution agreement with Legacy absent a judicial determination that UMG and UMPV have no rights in the Albums.

50. Montaner and Legacy have been damaged, and continue to be damaged, by UMG and UMPV's wrongful claims of ownership over the Albums.

51.     UMG and UMPV's actions are directly repugnant to Montaner and Legacy's rights as owners of the Albums.

### COUNT I – DECLARATORY JUDGMENT PURSUANT TO 17 USC § 203
*ALL PLAINTIFFS AGAINST ALL DEFENDANTS*

52.     Plaintiffs repeat and hereby reincorporate by reference into this count the allegations above in paragraphs 1-51 as if fully set forth herein, and further allege:

53.     This is a count for declaratory relief pursuant to 28 U.S. Code § 2201 and Fed. R. Civ. Pr. 57.

54.     The Albums were recorded in Venezuela.

55.     The Albums were first published on following dates in the following markets and were not simultaneously published in the United States:

| Album | Release Date | First Publication |
|---|---|---|
| *Ricardo Montaner* | December 9, 1986 | Venezuela |
| *Ricardo Montaner 2* | May 1, 1988 | Venezuela |
| *Un Toque de Misterio* | November 1, 1989 | Venezuela |
| *En El Último Lugar del Mundo* | May 1, 1991 | Venezuela |
| *Los Hijos del Sol* | November 19, 1992 | Venezuela |

56.     As a result, the Albums are exempted from filing for United States Copyright registration under 17 U.S.C. § 104; *see also* Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886, as last revised July 24, 1971 and amended Sept. 28, 1979, S. Treaty Doc. No. 99-27, 1161 U.N.T.S. 30.

57.     Plaintiffs and Defendants have an actual present, adverse and antagonistic interest in the subject matter of this action.

58.     The antagonistic and adverse interests are all before the Court by proper process and the relief sought is not for legal advice by the Court, not to answer questions propounded from

curiosity.

59.     Montaner and Legacy intend to remain a successful business within the music industry by Montaner's exercise of sole ownership of the Albums and Legacy's subsequent rightful exploitation of the rights granted in the License Agreement.

60.     Defendants have demonstrated an inability to respect Plaintiffs' legal ownership and licensed rights of the Albums.

61.     Any right to exploit or distribute the Albums that UMG previously may have had terminated upon one of the following instances:

    a.  The failure to pay royalties to Montaner;

    b.  The dissolution of UMV;

    c.  The delivery of the Termination Notices; or

    d.  The 2024 Termination Notice.

62.     Plaintiffs are the proper owners of all rights in the Albums, and would like to continue to exploit the Albums in order to remain a viable business in the music industry.

63.     However, Plaintiffs cannot do so because Defendants have interfered in Plaintiffs' lawful and proper licensure of the Albums to ADA Latin, by demanding that ADA Latin cease doing business with Plaintiffs with0 respect to the Albums.

64.     The Albums are not a work made for hire as that term is understood under United States copyright law.  17 USC § 201(b); *see also* 17 USC § 101.

65.     Nothing in the Love Records Agreement, the *Finiquito*, the Love Music Agreement, or the 2001 Distribution Agreement can be construed as a work for hire agreement.

66.     Montaner was not an employee of any of the Defendants or their predecessors in interest.

9

67.     The tortious interference by Defendants occurred by means of correspondence sent by Defendants to the Florida offices of ADA Latin.

68.     Plaintiffs request this Court declare that Montaner is the rightful owner of the Albums and to enjoin Defendants from interfering with Plaintiffs' right to exploit the Albums in any way they choose.

69.     A declaratory judgment that Plaintiffs are the proper owners of the copyrights in the Albums will resolve the pending issue with ADA Latin concerning the Defendants' demand for removal of Plaintiffs' recordings from the distribution.

**WHEREFORE**, for the reasons set forth herein, Plaintiffs request this Court to enter an Order that (1) Plaintiff Hector Reglero is the rightful owner of the Albums, (2) Defendants have no plausible claim to the Albums and (3) that Plaintiff Hector Reglero may continue to exploit the Albums as he so chooses, together with an award of attorneys' fees and costs pursuant to 17 USC § 505.

### COUNT II – TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS CONTRACTUAL BUSINESS RELATIONSHIP
*ALL PLAINTIFFS AGAINST ALL DEFENDANTS*

70.     Plaintiffs readopt and reincorporate by reference into this count the allegations above in paragraphs 1-51 as if fully set forth herein, and further allege:

71.     This is a count for tortious interference with advantageous and contractual business relationship against both Defendants.

72.     Plaintiffs established an advantageous and contractual business relationship with licensees such as ADA Latin to license the Albums and their other recordings to consumers, from which Plaintiffs have and hope to continue to earn profits.

73.     Plaintiffs maintained advantageous business and contractual relationships with

10

ADA Latin and others in order to exploit the Albums and to receive revenue from the license, and anticipate that same will continue but for Defendants' interference.

74.     Defendants had knowledge of the separate business relationships between Plaintiffs and ADA Latin, but were not a party to the business arrangements and had no privilege to interfere with the said arrangements.

75.     Defendants tortiously and without justification interfered in the relationships between Plaintiffs and ADA Latin by demanding the removal of Plaintiffs' sound recordings from distribution.

76.     Defendants' actions have caused a real interference between Plaintiffs and ADA Latin's business relationship.

77.     As a direct and proximate result of Defendants' actions, Plaintiffs have been damaged.

78.     Although the full scope of harm caused by Defendants' wrongful claims of ownership over the albums is beyond calculation, the amount of calculable monetary damages to Plaintiffs as of the time of this filing is in excess of $1,000,000.00 (One Million US Dollars) and continuing to accrue.

**WHEREFORE**, Plaintiffs demand compensatory and special damages in the form of lost profits from the exploitation of the Albums and such other further relief this Court deems just and proper against Defendants.

**Respectfully submitted,**

**WOLFE LAW MIAMI, P.A.**
*Counsel for Plaintiffs Hector Reglero p/k/a "Ricardo Montaner" and Montaner Legacy Music LLC*
1100 Brickell Bay Drive, Suite 5200

11

Miami, FL 33131
Phone:  305-384-7370
Fax:     305-384-7371
By*: /s/ Richard C. Wolfe*
RICHARD C. WOLFE
Florida Bar No.: 355907
rwolfe@wolfelawmiami.com
By*: /s/ Nick Medina*
NICK MEDINA
Florida Bar No.: 1048798
nmedina@wolfelawmiami.com