**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:26-cv-24483**

HECTOR REGLERO p/k/a "Ricardo
Montaner" in Individual, and MONTANER
LEGACY MUSIC LLC, a Florida Limited
Liability Company,

        Plaintiffs,

v.

UNIVERSAL MUSIC GROUP N.V., a
Dutch naamloze vennootschap (public
limited liability company), and
UNIVERSAL MUSIC PUBLISHING
VENEZUELA S.A., a Venezuelan Sociedad
Anonima (corporation),

        Defendants.

_____/

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

Plaintiffs, HECTOR REGLERO p/k/a RICARDO MONTANER ("Montaner") and

MONTANER LEGACY MUSIC LLC ("Legacy") (collectively referred to as "Plaintiffs"), by and

through undersigned counsel, moves for a preliminary injunction pursuant to Federal Rule of Civil

Procedure 65 and Local Rule 7.1, against Defendants, UNIVERSAL MUSIC GROUP N.V.

("UMG"), and UNIVERSAL MUSIC PUBLISHING VENEZUELA, S.A. ("UMPV")

(collectively referred to as "Defendants"), and in support herein alleges as follows:

## I.    OVERVIEW

Plaintiffs, Montaner and Legacy, respectfully move for a preliminary injunction

against Defendants enjoining Defendants from communicating with Warner Music Latina

Inc. d/b/a ADA Latin ("ADA Latin") about the Plaintiffs' Albums (as that term is used in

the Complaint) or otherwise attempting to interfere with Plaintiffs' business relationships.

As described in the Complaint and herein, Defendants' interference with Plaintiffs' business relationship with ADA Latin has caused ADA Latin to question Plaintiffs' ownership of the copyrights at issue and consider termination of the agreement between them, on which Plaintiffs rely for profits. This Motion for Preliminary Injunction is supported by Plaintiffs' Complaint (ECF No. 1) (the "Complaint") and Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, filed concurrently herewith.

## II.   BACKGROUND

The following facts have been established in the Complaint. For the Court's convenience, the paragraph numbering follows that of the Complaint:

### RELEVANT FACTS

17.   On or about November 3, 1986, Montaner entered into an agreement with Love Records, L.R., C.A. ("Love Records"), which at the time was a Venezuelan record label (the "Love Records Agreement").  *See* Compl. Ex. A.

18.   Between 1986 and 1992, Montaner recorded, and Love Records released, five albums under the Love Records Agreement.

19.   These albums were *Ricardo Montaner*, *Ricardo Montaner 2*, *Un Toque de Misterio*, *En El Último Lugar del Mundo*, and *Los Hijos del Sol* (together, the "Albums").

20.   On November 19, 1993, Montaner and Love Records entered into a settlement agreement known as a *finiquito* to resolve a dispute between themselves, and other related parties (the "*Finiquito*").  *See* Compl. Ex. B.

21.   Pursuant to the *Finiquito*, the Love Records Agreement was annulled and all rights in the Albums reverted to Montaner.  *See* Compl. Ex. B at p. 6.

22.     On or about November 19, 1993, Montaner and Love Music, S.A., a separate but related entity to Love Records, entered into an agreement which further confirmed Montaner's sole ownership of the Albums and the reversion of all publishing rights to Montaner.  *See* Compl. Ex. C.

23.     Through a series of alleged acquisitions and assignments, Universal Music Venezuela, S.A., in 2001, claimed to be the assignee of Love Records' right under the *Finiqutio* and/or the Love Music Agreement and claimed to be entitled to distribute and exploit the Albums.

24.     On or about February 3, 2001, Universal Music Venezuela, S.A. ("UMV"), a now-defunct former Venezuelan subsidiary of UMG, entered into a distribution agreement with Montaner (the "2001 Distribution Agreement").  *See* Compl. Ex. D.

25.     The 2001 Distribution Agreement confirms that Montaner is the sole owner of the Albums.

26.     The 2001 Distribution Agreement lacked any specificity as to duration.

27.     On or about December 12, 2022, UMG dissolved UMPV, which was recorded on December 22, 2022.

28.     UMV and its parent, UMG, have grossly and willfully defaulted on the 2001 Distribution Agreement by failing to pay any royalties whatsoever to Montaner for the entire duration of the 2001 Distribution Agreement.

29.     Despite UMG and UMPV not being entitled to claim any distribution right under any theory for the aforementioned reasons, on or about March 30, 2022, Montaner delivered notices of the termination of the 2001 Distribution Agreement pursuant, in part, to 17 USC § 203 (the "Termination Notices").  *See* Compl. Ex. E.

30.     The Termination Notices set the effective date of termination as July 1, 2024.

31.     Although the Termination Notices were effective, after UMG and its affiliates issued correspondence disputing the validity of the Termination Notices, on March 5, 2024 Montaner delivered to UMG and UMV a second notice of termination pursuant to 17 USC § 203 terminating the Love Records Agreement and thereby extinguishing any possible claim UMG and UMPV may have over the Albums under the same (the "2024 Termination Notice").  *See* Compl. Ex. F.

38.     After the Termination Notices, Montaner granted Legacy an exclusive license to distribute, sublicense, and otherwise commercially exploit the Albums.

39.     Subsequent to the termination of the 2001 Distribution Agreement, Montaner as the sole owner of the Albums granted an exclusive license to Legacy for the purpose of distributing, sublicensing, or otherwise commercially exploiting the Albums.

40.     On or about June 2, 2025, Legacy entered into an agreement with ADA Latin to distribute and exploit the Albums.

41.     Subsequently, on April 22, 2026, UMG transmitted correspondence to ADA Latin, purportedly on behalf of UMPV, falsely claiming that UMPV is the owner of the Albums. *See* Compl. Ex. G.

42.     In the Wrongful Claim Letter, UMPV demanded that ADA Latin "refrain from the manufacture, distribution, marketing, or other sale and/or exploitation in any manner" of the Albums.

43.     At the time it tendered the Wrongful Claim Letter, UMPV and UMG knew that they did not own the Albums.

44.     UMPV and UMG knew that any entitlement to distribute the albums had already expired.

45.     UMPV and UMG further knew that they never owned the albums, nor did any entity UMG had previously owned or purchased, such as Love Records, S.A., own the albums, nor did the parent company of Love Records, S.A.

46.     In fact, UMPV has never had any license or other entitlement whatsoever to exploit the Albums, as the only agreements related to the Albums were the now-terminated 2001 Distribution Agreement (with the now-defunct UMV) and whichever now-terminated preceding agreement under which UMV purported in the 2001 Distribution Agreement to have prior distribution rights.

47.     On May 6, 2026, UMG sent correspondence to Legacy again falsely claiming that UMPV owned the Albums and making demands that Legacy take down the Albums and provide information relating to the distribution of the Albums.

48.     UMPV and UMG's wrongful conduct has caused ADA Latin to demand assurances and indemnification from UMPV and UMG's wrongful claims.

49.     There is an immediate and present risk that ADA Latin will seek to terminate its distribution agreement with Legacy absent a judicial determination that UMG and UMPV have no rights in the Albums.

50.     Montaner and Legacy have been damaged, and continue to be damaged, by UMG and UMPV's wrongful claims of ownership over the Albums.

51.     UMG and UMPV's actions are directly repugnant to Montaner and Legacy's rights as owners of the Albums.

### III.    INJUNCTION ANALYSIS

In order to obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the

relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Mangos Tropical v. Mango Martini*, 844 F. Supp. 2d  1246 (S.D. Fla. 2011); *Herb Reed Enters., LLC  v. World Famous Platters,* 2014 U.S. Dist. LEXIS 22046 (M.D. Fla. 2014); *Schiavo ex. rel Schindler v. Schiavo,* 403 F. 3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.,* 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Given the facts above and as further discussed below, Plaintiffs can satisfy these legal requirements.

A.  **There is a Substantial Likelihood that Plaintiff Will Prevail on The Merits of its Claims for Declaratory Relief and Tortious Interference**

1.  **Plaintiff Has Shown Prima Facie Evidence of Copyright Ownership**

Plaintiffs' first claim for declaratory relief is governed by the Declaratory Judgment Act. See *Tony v. Evanston Ins. Co*., 724 F. Supp. 3d 1282, 1289 (S.D. Fla. 2024) ("[T]he legal standard for reviewing a declaratory judgment claim in a diversity jurisdiction action in federal court is exclusively under 28 U.S.C. § 2201."). "In all cases arising under the Declaratory Judgment Act," the "threshold question is whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co*., 68 F.3d 409, 414 (11th Cir. 1995). "The party who invokes a federal court's authority must show, at an irreducible minimum, that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Id*. (quotation marks omitted); see also *Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp*., 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011). Here, that is exactly what has occurred and is alleged in the Complaint. Defendants' failure to acknowledge Plaintiff's ownership of the copyrights at issue and, even further, their wrongful claim of ownership over

those same copyrights has created a justiciable controversy that can only be redressed by this Court's disposition.

Critically, Defendants are wrongfully claiming *ownership* over the Albums in correspondence to Plaintiffs and to third parties, not just a contractual right to exploit the Albums in a certain manner, such as distribution. *See* Compl. Ex. G. Federal courts have routinely recognized that a dispute over copyright ownership is a valid basis for seeking injunctive relief. *Massacre v. Davies*, No. 13-cv-04005 NC, 2014 LX 24144, at *8 (N.D. Cal. May 12, 2014). In *Massacre v. Davies*, an owner of three songs stated a claim for declaratory or injunctive relief by alleging that the "defendant has made claims to works that he did not co-author." *Id*. Further, "A copyright registration certificate proves prima facie proof of the existence of a valid copyright." *C.B. Fleet Co. v. Unico Holdings, Inc*., 510 F. Supp. 2d 1078, 1081 (S.D. Fla. 2007) (Ryskamp, J.) (cleaned up)). "Once the plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman v. Mnemonics, Inc*., 79 F.3d 1532, 1541 (11th Cir. 1996). However, whereas here, where there are copyrights published in a foreign treaty state (such as Venezuela), they are exempted from filing for United States Copyright registration under 17 U.S.C. § 104; see also Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886, as last revised July 24, 1971, and amended Sept. 28, 1979, S. Treaty Doc. No. 99-27, 1161 U.N.T.S. 30. Indeed, federal courts have held that for unregistered foreign copyrights, the foreign country where the copyright was created "determines the ownership and essential nature of the copyrights…" *U.S. Law. Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) ("Initial ownership of a copyrighted work is determined by the laws in the work's country of origin.") (citation omitted); *Edmark Indus. SDN. BHD. v. S. Asia. Int'l (H.K.) Ltd*., 89 F. Supp. 2d 840, 843 (E.D. Tex. 2000) (citing *Itar-Tass*, 153 F.3d 82). Under

Venezuelan Copyright Law ("VCL"), "copyright ownership initially vests in a work's actual creator". *RCTV Int'l Corp. v. Rosenfeld*, 2016 U.S. Dist. LEXIS 136867, *30. Further, "it shall be presumed, in the absence of proof to the contrary, that the author of the work is the person named as such in the customary manner on the work or, as the case may be, the person who is announced as being the author in the communication thereof."[1]

As the Complaint sets forth, the copyrights at issue consist of five albums of sound recordings, which were each first published in Venezuela, including: (1) *Ricardo Montaner*, (2) *Ricardo Montaner 2*, (3) *Un Toque de Misterio*, (4) *En El Ultimo Lugar del Mundo*, and (5) *Los Hijos del Sol*. *See* Compl. ¶ 55. Plaintiff has provided clear evidence that Montaner was the sole owner of the Albums by way of original authorship and publication of the works to the public as the sole author (which cannot be contested) and third-party record label releases over any claim to the same. Id. at ¶¶ 17-22. In its Complaint, Plaintiff has attached Exhibit "B," a settlement agreement with a non-party who is no longer in existence, which evidences the reversion of all rights in the Albums to Montaner. Defendants' only involvement with the Albums was a purported assignment of the agreement that was resolved by settlement and a 2001 Distribution Agreement entered into with Montaner. However, importantly, <u>neither of these relied-upon agreements could form the basis of an ownership interest in the Albums</u>. At best, they are unfounded claims for a right to distribute the Albums. But even then, those claims cannot withstand scrutiny. As any distribution rights were either never validly assigned or were terminated by Plaintiffs' express notice. Venezuelan law requires notice or acceptance by the counterparty of a contract before it

---

[1] Law on copyright, Venezuela (Bolivarian Republic of). Law on Copyright, Venezuela (Bolivarian Republic of), WIPO Lex. (n.d.). https://www.wipo.int/wipolex/en/legislation/details/3989

can be assigned.[2] 34.   In addition, Venezuelan copyright law provides that the author must consent in writing to any transfer of a copyright.[3] 35. Here,  neither  UMG  nor  UMPV  ever  sought Montaner's consent to any purported transfer, nor did they notify Montaner of any purported transfer of rights. Even if the purported assignment to Defendants is somehow deemed valid, then the underlying contracts were expressly terminated under Venezuelan, Florida, and Federal law. Under Venezuelan law, a contract without a defined term is unilaterally terminable by either party.[4] Florida  law  also  recognizes  the  right  for  a  party  to  terminate  a  contract  with  successive performances but indefinite duration upon notice after a reasonable time.  Fla. Stat. § 672.309. Lastly, section 203 of the Copyright Act allows an author to terminate a transfer of rights under certain conditions, all of which apply here. 17 USC § 203. Each of the allegations of intent to terminate and prior notices sent are exemplified in the Complaint and the exhibits attached thereto, Accordingly, any distribution rights which Defendants may have had, are now extinguished.

Defendants' actions in this case are exemplary of those this Court has found to be blatantly in violation of a copyright author's exclusive rights. Similar to the case in *Massacre*, the Plaintiffs in this action are seeking a determination that Montaner is the sole owner and that Defendants have no ownership interest in the Albums, which implicates issues of authorship and other doctrines found in 17 USC 21.  *Massacre v. Davies*, No. 13-cv-04005 NC, 2014 LX 24144, at *5-7 (N.D. Cal. May 12, 2014). As described in both the Complaint and above, Plaintiffs' rights are now being severely affected by not only Defendants' failure to acknowledge Plaintiffs' exclusive ownership in the Albums but also their unsupported claim of ownership over the same. Such refusals and

---

[2] Venez. CÓD. CIVIL art. 1.550 (1982) ("El cesionario no tiene derecho contra terceros sino después que la cesión seha notificado al deudor, o que éste la ha aceptado."), https://wipolex-res.wipo.int/edocs/lexdocs/laws/es/ve/ve018es.pdf.
[3] Venez. Copyright Act, Title III, Ch. 1, Sec. 3, Art. 57.
[4] Venez. Sala Constitucional, sentencia N° 1771, December 16, 2013; Venez. Sala de Casación Civil, sentencia N° RC.000417, August 12, 2011, Hyundai de Venezuela, C.A. vs. Hyundai Motor Company.

unsupported claims have inhibited Plaintiffs' ability to distribute the Albums by way of ADA Latin's expression of termination of the distribution it has with Plaintiff Legacy. Such an adverse position on the ownership of the Albums has created a justiciable controversy, which Plaintiffs respectfully request is cured by a declaration that Plaintiffs are the exclusive owners of the copyrights therein, and in the interim, a preliminary injunction enjoining Defendants from claiming ownership over those copyrights.

### 2.   Defendants' Tortious Interference is Irrefutable

Under Florida law, a tortious interference with business relationships claim requires four elements: "(1) the existence of a business relationship [under which the plaintiff has legal rights]; (2) knowledge of the relationship on the part of the defendants; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the tortious interference with the relationship.") *SMS Audio, LLC v. Belson*, No. *9:16-cv-81308-MIDDLEBROOKS*, 2016 U.S. Dist. LEXIS 195790, at \*10-11 (S.D. Fla. Aug. 15, 2016); *see also G.M. Brod & Co. Inc., v. U.S. Home Corp*., 759 F.2d 1526, 1534 (11th Cir. 1985) (explaining elements of tortious interference under Florida law). A preliminary injunction has been recognized as a viable form of relief for a tortious interference claim. *See generally*, *Marine Turbo Eng'g, Ltd. v. Turbocharger Servs. Worldwide, LLC*, No. 11-cv-60621, 2011 U.S. Dist. LEXIS 147583, at \*27-29 (S.D. Fla. Dec. 22, 2011) (entering a preliminary injunction in part based on Plaintiffs' likelihood of success on a tortious interference with business relationships claim); *Heavener, Ogier Services, Inc. v. R. W. Florida Region, Inc.,* 418 So. 2d 1074, 1075-76 (Fla. 5th DCA 1982) (finding plaintiff entitled to temporary injunction against tortious interference with contractual relationship). As described in both the Complaint and above, each of these elements are clearly set forth: (1) Legacy and ADA Latin entered into a distribution agreement for the distribution of the

Albums, (2) Defendants acknowledged the distribution agreement by way of sending a letter to ADA Latin wrongfully alleging that they are the owners of the Albums, (3) Defendants' letter, and further suspected communications, were intentional in substance and unjustified in that (for the reasons stated above) Defendants have no possible claim in ownership of the Albums, and (4) Defendants interference with Legacy's contractual relationship with ADA Latin has caused damages in the form of lost profits from halted distribution of the Albums.   However, notably, Defendants' interference has caused damage to Plaintiffs in further amounts that cannot be redressed by monetary awards, which will be further addressed below. Plaintiffs respectfully request an award of damages to be determined by this Court at a later date, and in the interim, a preliminary injunction enjoining Defendants from interfering with Plaintiffs' exercise of ownership over the Albums and Legacy's contractual relationship with ADA Latin.

### B. A Preliminary Injunction is Necessary to Avoid Irreparable Harm Caused by Defendants' Copyright Infringement and Tortious Interference

A party seeking injunctive relief must first show that it will suffer irreparable harm in the absence of an injunction. See *Apple Inc. v. Samsung Elecs. Co., Ltd*., 809 F.3d 633, 639 (Fed. Cir. 2015). "[T]he irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Circ. 2012).

#### 1. Irreparable Harm from Defendants' Continued Wrongful Claims of Ownership

Plaintiffs can demonstrate irreparable harm given that Defendants have wrongfully claimed to be the owners of the Albums, appear poised to continue to wrongfully claim ownership over the Albums, and intend to interfere in any current or future endeavor Plaintiffs have or might undertake to distribute the Albums.  An injury is "irreparable" when "it cannot be undone through monetary remedies." *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (citation omitted). Moreover, "the asserted irreparable injury must be neither remote nor speculative, but

actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Any further baseless claims by Defendants will continue to mar Plaintiffs' efforts to license the Albums, and courts in this circuit have found that conduct that poses a continued risk to the marketability of musical works is grounds for showing irreparable harm. *Isaac Hayes Enterprises, LLC v. Trump*, No. 1:24-CV-3639-TWT, 2024 U.S. Dist. LEXIS 163188, at *9 (N.D. Ga. Sep. 11, 2024) (where prospective uses of musical works could lead to false association between Defendants and the musical works, harm is neither speculative nor remote).

The threat of irreparable harm has already occurred here and will continue in the future. Montaner has made significant investments to create the Albums; to enter into agreements to exploit them; to protect them from third party infringers (which Defendants failed to do); to embark on an international tour where selections from the Albums are regularly performed; and to market the exploitation of the Albums with Plaintiffs' chosen distributor. Defendants have falsely claimed to Plaintiffs and to third parties that they are the owners of the Albums, despite Defendants' knowledge that they have never owned the Albums and that any rights to distribute the Albums have been terminated. Defendants' willful and wrongful claim of ownership over the Albums will not only continue to damage Plaintiffs <u>but also encourage additional wrongful claims of ownership without an injunction</u>. At a minimum, Defendants' continued false claims of ownership injure Plaintiff through not only a loss of extensive revenue, but more importantly, goodwill and reputational damage, which cannot be redressed by an award of monetary relief.

a.      **Plaintiff will suffer further irreparable harm if Defendant is permitted to continue its unsupported claim of ownership.**

Plaintiff will continue to suffer irreparable harm unless Defendants' unsupported claim of ownership tortious conduct is enjoined and Defendants are blocked from interfering with Plaintiffs' lawful exploitation of their copyrighted works. Plaintiffs exercise

great care and exert substantial effort to control the nature and quality of how they distribute the Albums. Defendants continue to unlawfully disseminate false claims of ownership over the Albums with the intent to mislead and deceive third-party streaming services, other music distributors, and the general public. Specifically, Defendants false claims have created an immediate risk of discontinued distribution by way of Legacy's agreement with ADA Latin. In so doing, Defendants have caused irreparable damage to Plaintiffs' protected intellectual property and the goodwill and reputation of Plaintiffs, further warranting an injunction to prevent Plaintiffs from suffering further irreparable harm.

    **b.   Defendant's wrongful claims of ownership threaten to result in the loss of Plaintiffs' copyright exclusivity of distribution and licensing.**

A copyright holder possesses "the right to exclude others from using his property." *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 392, 126 S. Ct. 1837, 1840 (2006); *see also Fox Film Corp. v. Doyal,* 286 U.S. 123, 127, 52 S. Ct. 546, 76 L. Ed. 1010 (1932). That right is rendered meaningless where others are permitted to interfere in Plaintiffs' exploitation of Plaintiffs' Albums. This is particularly true because Plaintiff has strategically licensed its intellectual property to some third parties while specifically excluding others like Defendant. Thus, the inability to exclude others for any period during the term of the copyrights—including during the time necessary to reach a final judgment in this case—constitutes harm for which Plaintiffs cannot be adequately compensated at law. *See Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1998). An injunction is necessary in order to preserve the *status quo* and Plaintiffs' right to exclude others from distributing and licensing the Albums, including Defendants.

**2.  Irreparable Harm from Continued Tortious Interference**

Regarding Defendant's tortious interference, "irreparable injury is presumed in cases

involving tortious interference with business relationships. In such cases, irreparable injury need not be alleged or proven." *Special Purpose Accts. Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1105 (S.D. Fla. 2000) (citing *Dotolo v. Schouten*, 426 So.2d 1013, 1015 (Fla. 2d DCA 1983) and *Unistar Corp. v. Child*, 415 So.2d 733, 735 (Fla. 3d DCA 1982)); see also *FC Funding LLC v. MCJ Auto Sales of Cent. Fla., Inc*., No: 6:12-cv-1713, 2012 U.S. Dist. LEXIS 172593, 2012 WL 12883964, at *3 (M.D. Fla. Dec. 5, 2012*); ECapital Commer. Fin. Corp. v. Hitachi Cap. Am. Corp*., 519 F. Supp. 3d 1129, 1136 (S.D. Fla. 2021)

As described in both the Complaint and above, Plaintiffs have secured a valuable distribution agreement with ADA Latin.  As a direct result of Defendants' false and unsubstantiated claims of ownership over the Albums, ADA Latin has threatened to terminate its distribution agreement with Plaintiffs, and in fact, absent a preliminary injunction enjoining Defendants from tortious interference appear imminently poised to terminate the agreement. Although Plaintiffs have an interest in an amount of not less than One Million and No/100 Dollars ($1,000,000.00) in the first year of the ADA Latin distribution agreement, Defendants' tortious interference, if not enjoined, would result in irreparable harm that cannot be ascertained by amount since it would imperil any future distribution agreement as well and Plaintiffs' goodwill with distributors and digital service providers in the music industry.  Most importantly, ADA has indicated that it will cease distributing the Albums as a result of Defendants' false claims of copyright ownership, which will prevent Plaintiffs from exploiting their copyrighted works at all through streaming and/or online services.  If Plaintiffs' current sound recordings are removed from distribution, then not only will Plaintiffs lose stream counts, playlisting, and monthly revenues, but it would take anywhere

<u>from three to six months (after this court makes a final determination) and great efforts to re-upload the sound recordings to streaming platforms and re-establish their current streaming levels, which would cause great harm that cannot be calculated into a monetary figure</u>. Thus, Plaintiffs will face irreparable harm beyond those that are remediable by monetary relief should Defendants' conduct be permitted to continue.

### 3.      Damage to Plaintiffs' Goodwill and Reputation

"Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc*., 664 F.3d at 930. "Courts recognize that irreparable harm frequently manifests itself in a variety of consequences that are often difficult to quantify." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1360 (S.D. Fla. 2016), aff'd, 708 F. App'x 998 (Fed. Cir. 2017) (citing *Douglas Dynamics, LLC v. Buyers Prods*. Co., 717 F.3d 1344 (Fed. Cir. 2013)).

Defendant's false claims of ownership over the Albums have and will continue to damage Plaintiffs' goodwill and reputation in the market and among third-party streaming services and consumers. If Defendant is permitted to continue its wrongful claims of ownership over the Albums and interference with the relationships based on same, Plaintiff will not be able to effectively protect or enforce its copyright rights concerning unauthorized distribution and licensing of its protected products and the establishment of business relationships built on same going forward. Such harm is not compensable by monetary damages, warranting the issuance of an injunction against the Defendant. *See Douglas Dynamics*, 717 F.3d at 1345.

### C. <u>The Balance of the Hardship Weighs Heavily in Plaintiffs' Favor</u>

For the third factor in determining whether to issue a preliminary injunction, the Court must balance the harm to the movant from the denial of the preliminary injunction with the harm

that the non-movant will incur if the injunction is granted. *Hybritech,* 849 F.2d at 1457.

The balance of the hardships in this case favors Plaintiff. In similar copyright situations, this court has continuously opined that "the balance of hardships weighs in favor of granting permanent injunctive relief. Plaintiff faces hardship from loss of sales and his inability to control his reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from interfering with Plaintiffs' right to exploit their own  Albums.  " *XYZ Corp. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 22-cv-24022, 2023 U.S. Dist. LEXIS 60532, at *11-12 (S.D. Fla. Apr. 4, 2023). Even if Defendant is seen to face slight hardship regarding the injunction of tortious interference, this Court has found that it is outweighed by individuals in Plaintiffs' position. *ECapital Commer. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1136 (S.D. Fla. 2021); see also *SMS Audio, LLC v. Belson, No. 9:16-cv-81308-MIDDLEBROOKS*, 2016 U.S. Dist. LEXIS 195790 (S.D. Fla. Aug. 15, 2016). Here, Plaintiff Montaner is the original author of the Albums at issue, which are personal to him and subject to any exploitation afforded to Montaner under the Copyright Act. In contrast, Defendants are a major music company consisting of distributors and publishers exploiting hundreds of thousands, if not millions, of copyrights for profit. The enjoinment of their wrongful claim and exploitation over the five albums at issue here will not effect their business in the slightest. Because the balance of hardships strongly favors Plaintiff, the Court should impose a preliminary injunction against Defendant and order that Defendant discontinue the unauthorized distribution and licensing of Plaintiffs' Copyrights, as well as any other property owned by Plaintiff, and cease any further action that tortiously interferes with Plaintiffs' business relationships.

**D.  A Preliminary Injunction is in the Best Interest of the Public**

The final factor concerns the impact that injunctive relief would have on the public

interest and focuses on whether there exists some "critical public interest" that would be harmed by the grant of injunctive relief. *See Hybritech*, 849 F.2d at 1458. Entry of a preliminary injunction in this case is in the best interest of the public. There is a critical public interest in protecting intellectual property rights, especially regarding copyrights, and promoting the public's access to the Albums by enjoining Defendants' tortious interference is in the public interest. *See H.K. Leyuzhen Tech. Co. v. Individuals*, No. 25-23740-CIV-MARTINEZ/Sanchez, 2026 LX 292866, at *10 (S.D. Fla. Apr. 29, 2026).

As set forth above, Plaintiffs have a high likelihood of succeeding on their declaratory relief claims, which necessitates a finding of copyright ownership. In such cases, this Court has found that a preliminary injunction serves the "public interest because the public interest lies with protecting the rights of copyright owners." *EyePartner, Inc. v. Kor Media Grp. Ltd. Liab. Co*., No. 4:13-10072-CIV, 2013 U.S. Dist. LEXIS 98370, at *16-17 (S.D. Fla. July 15, 2013) (citing *CBS Broadcasting, Inc. v. EchoStar Communications Corp.,* 265 F.3d 1193, 1198 (11th Cir. 2001)); see also *C.B. Fleet Co., Inc. v. Unico Holdings, Inc.,* 510 F. Supp. 2d 1084 (S.D. Fla. 2007) ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works."). Further, Enjoining Defendant will not injure any "critical public interest." *See Hybritech*, 849 F.2d at 1458. The Defendant's illicit claims over the ownership of the Albums are only for their benefit. It is not only equitable but in the public's best interest for this Court to issue this injunction, which would protect and promote intellectual property rights and prevent future (and possibly current) infringement by not only Defendants but also other third parties under contributory principles.

Further, an injunction against Defendants' tortious conduct is in the public's best

interest. This Court has explicitly found that the sorts of interests that Plaintiff is trying to protect are legitimate business interests. *AutoNation v. O'Brien*, 347 F. Supp. 2d 1299, 1307 (S.D. Fla. 2004). The public also has an interest in preventing unfair, tortious competition. *XN Fin. Servs. v. Conroy*, No. 12-80143-CIV, 2012 U.S. Dist. LEXIS 207445, at *30 (S.D. Fla. Mar. 5, 2012). Here, it would be in the public's interest to restrict Defendants from disrupting valid business relationships and possibly manipulating third parties into entering into exploitative agreements with Defendants concerning the Albums of which they have no rights to do so. Because Plaintiffs have demonstrated a likelihood of success on their copyright-related and tortious interference claims, the public interest can only be served by prohibiting Defendants from infringing Plaintiffs' intellectual property rights and tortiously interfering with Plaintiffs' business relationships.

## IV.   **BOND**

Based on the circumstances of this case and the blatant and purposeful actions of Defendants' false claim of ownership and intentional interference with Plaintiffs' Albums, a $5,000.00 bond is sufficient to cover the costs and damages sustained by Defendants should it later be determined that it was wrongfully enjoined. Moreover, if necessary, this Court can revisit the bond issue during the preliminary injunction phase of this matter.

## **CONCLUSION**

For the foregoing reasons, this Court should grant a preliminary injunction (1) enjoining Defendants from claiming ownership over Plaintiffs' Albums, as well as any other intellectual property owned by Plaintiff, and (2) enjoining Defendants from tortiously interfering with Plaintiffs' business relationships, including but not limited to Legacy's distribution agreement with ADA Latin.

Respectfully submitted,

**WOLFE LAW MIAMI, P.A.**
*Counsel for Plaintiffs Hector Reglero p/k/a "Ricardo Montaner" and Montaner Legacy Music LLC*
1100 Brickell Bay Drive, Suite 5200
Miami, FL 33131
Phone:  305-384-7370
Fax:     305-384-7371
By*: /s/ Richard C. Wolfe*
RICHARD C. WOLFE
Florida Bar No.: 355907
rwolfe@wolfelawmiami.com
By*: /s/ Nick Medina*
NICK MEDINA
Florida Bar No.: 1048798
nmedina@wolfelawmiami.com

<u>**CERTIFICATE OF SERVICE**</u>

We hereby certify that on July 16, 2026, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

<u>/s/ Richard C. Wolfe</u>